# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JOHN DAVID MILEY, III, and DR. STEVEN RICHARD SMITH, <br><br> *Plaintiffs*, <br><br> v. <br><br> HATTERAS FUNDS, LP, HATTERAS INVESTMENT PARTNERS, LP; DAVID B. PERKINS, H. ALEXANDER HOLMES, STEVE E. MOSS, GREGORY S. SELLERS, and THOMAS MANN, <br><br> *Defendants*. | ) ) ) ) ) ) ) ) )    C.A. No. 25-672-CFC ) ) ) ) ) ) ) ) ) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: November 7, 2025

**MELUNEY ALLEMAN & SPENCE, LLC**
William M. Alleman, Jr. (#5449)
1143 Savannah Road, Suite 3-A
Lewes, DE 19958
(302) 551-6740
bill.alleman@maslawde.com

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
William H. Spruance (#7118)
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473

**PARKS, CHESIN & WALBERT, P.C.**
M. Travis Foust
1355 Peachtree Street, Suite 2000
Atlanta, GA 30309
(404) 873-8000

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ......................................... 1

SUMMARY OF ARGUMENT ........................................................... 2

FACTUAL BACKGROUND .............................................................. 3

ARGUMENT ............................................................................... 5

I.  SLUSA DOES NOT PRECLUDE PLAINTIFFS' CLAIMS ...................... 5

    A.  Plaintiffs Do Not Allege Or Depend On Misrepresentations .............. 5

    B.  The "In Connection With" Requirement Is Not Satisfied As To Any Claims ........................................................................ 7

    C.  The Delaware Carve-Out Applies To The Fiduciary Claim ............... 9

II.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED TORTIOUS INTERFERENCE CLAIMS ........................................................... 9

    A.  The Registration Statements Are Contracts .............................. 9

    B.  Defendants Interfered With Plaintiffs' Contractual Rights ............... 11

III.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR BREACH OF FIDUCIARY DUTY ................................................. 15

    A.  Plaintiffs Have Standing To Assert Claims Directly ..................... 15

    B.  Defendants Breached Their Fiduciary Duties ............................ 17

CONCLUSION ........................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                        **<u>Page(s)</u>**

*Allen v. El Paso Pipeline GP Co.*,
   90 A.3d 1097 (Del. Ch. 2014)................................................................. 14-15, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................5

*Brookfield Asset Mgmt., Inc. v. Rosson*,
   261 A.3d 1251 (Del. 2021) ................................................................... 16-17

*CAMAC Fund L.P. v. Wagner*,
   C.A. No. 2023-0817-MTZ (Del. Ch. Apr. 15, 2024) (TRANSCRIPT) .......... 16-17

*CCSB Fin. Corp. v. Totta*,
   302 A.3d 387 (Del. 2023) .........................................................................9

*Chadbourne & Parke LLP v. Troice*,
   571 U.S. 377 (2014)..................................................................................8

*In re Charles Schwab Corp. Sec. Litig.*,
   2009 WL 1371409 (N.D. Cal. May 15, 2009).......................................10

*Edwards v. Sequoia*,
   2018 WL 6039815 (S.D.N.Y. Oct. 18, 2018).......................................11

*Garfield on behalf of ODP Corp. v. Allen*,
   277 A.3d 296 (Del. Ch. 2022)................................................... 14, 17-18

*In re Gaylord Container Corp. S'holders Litig.*,
   747 A.2d 71 (Del. Ch. 1999)...................................................................16

*In re Intelogic Trace, Inc.*,
   1999 WL 152944 (5th Cir. Feb. 22, 1999) ............................................11

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009)..................................................................15

*Lee v. Pincus*,
2013 WL 6804640 (D. Del. Dec. 23, 2013) ........................................................ 5, 6

*Malone v. Brincat*,
722 A.2d 5 (Del. 1998) ........................................................................................ 9

*McKesson HBOC, Inc. v. N.Y. St. Common Ret. Fund, Inc.*,
339 F.3d 1087 (9th Cir. 2003) ........................................................................ 10-11

*Mehra v. Teller*,
2024 WL 4249822 (Del. Ch. Sept. 20, 2024) .................................................. 17-18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) .............................................................................................. 5

*In re MultiPlan Corp. Shareholders Litig.*,
268 A.3d 784 (Del. Ch. 2022) ............................................................................ 15

*New Enter. Assocs. 14, L.P. v. Rich*,
292 A.3d 112 (Del. Ch. 2023) ............................................................................ 11

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
779 F.3d 1036 (9th Cir. 2015) .....................................................................*passim*

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
2016 WL 706018 (N.D. Cal. Feb. 23, 2016) .................................................*passim*

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
904 F.3d 821 (9th Cir. 2018) ........................................................................... 6-7

*Rowinski v. Salomon Smith Barney, Inc.*,
398 F.3d 294 (3d Cir. 2005) ................................................................................ 5

*Shearin v. E.F. Hutton Group*, *Inc.*,
652 A.2d 578 (Del. Ch. 1994) ............................................................................ 15

*Shuster v. AXA Equitable Life Insurance Co.*,
2015 WL 4314378 (D.N.J. July 14, 2015) ............................................................ 8

*Siegel v. Cantor Fitzgerald, L.P.*,
  2025 WL 1074604 (Del. Ch. Apr. 10, 2025) ........................................................16

*Taksir v. Vanguard Grp.*,
  903 F.3d 95 (3d Cir. 2018) .....................................................................................6

*In re Ultimate Escapes Holdings, LLC*,
  551 B.R. 749 (D. Del. 2016) ...................................................................................9

*Vejseli v. Duffy*,
  2025 WL 1189867 (Del. Ch. Apr. 24, 2025) .................................................. 16-17

*Walden v. Bank of New York Mellon Corp.*,
  2021 WL 2317856 (W.D. Pa. June 7, 2021) ...........................................................6

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) .............................................................................15

*WyPie Invs., LLC v. Homschek*,
  2018 WL 1581981 (Del. Super. Mar. 28, 2018) ............................................. 13-14

## **Other**                                                                      **Page(s)**

15 U.S.C. § 77 ................................................................................................... 5-9

15 U.S.C. § 78 ...............................................................................................*passim*

15 U.S.C. §§ 80, *et seq.*..............................................................................*passim*

## NATURE AND STAGE OF PROCEEDINGS

This class action arises from Defendants' *ultra vires* transaction that violated the Funds' contract with their investors and the Directors' fiduciary duties. The Hatteras Core Alternatives Funds are the Hatteras Master Fund, L.P. and four Core Alternatives Feeder Funds (the "Feeder Funds," and together with the Master Fund, the "Funds").[1]

Plaintiffs own partnership units issued by two of the Feeder Funds, which are organized as Delaware limited partnerships. ¶¶5-6.[2]

Defendant Hatteras Investment Partners, L.P. ("HIP") is the investment adviser to the Funds. ¶7. Defendant Perkins is HIP's CEO and he, along with Defendants Holmes, Moss, Sellers, and Mann (the "Director Defendants"), are members of the Funds' Boards of Directors (the "Board"). ¶¶8-12.

The Funds' registration statements and the 1940 Act prohibited the Funds from investing more than 25% of their assets in any single security or any single industry.  Only a majority vote of unitholders could amend that restriction, which never occurred. Yet in 2021, Defendants nonetheless caused the Funds to enter into

---

[1] The Funds are closed-end investment funds registered with the SEC pursuant to the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1, *et seq*. (the "1940 Act"). The Feeder Funds consist of Hatteras Core Alternatives Fund, L.P.; Hatteras Core Alternatives Institutional Fund, L.P.; Hatteras Core Alternatives TEI Fund, L.P.; and Hatteras Core Alternatives TEI Institutional Fund, L.P.

[2] Citations in the form "¶__" are to the Second Amended Complaint (D.I. 41).

1

a so-called "Plan of Liquidation" that exchanged the Funds' diversified portfolios of securities for a single security, which thereafter collapsed and caused hundreds of millions in losses. Defendants knowingly swapped the Funds' diversified securities for a single security without the required unitholder vote and thereby deprived unitholders of their contractual rights. This action asserts claims for tortious interference with (i) investors' contractual voting rights and (ii) investors' contractual right to a diversified portfolio (Counts I & II), and breach of fiduciary duty arising from Defendants' unauthorized conduct that caused investors direct and substantial injury (Count III). Defendants removed this action from the Court of Chancery and have moved to dismiss Plaintiffs' Second Amended Complaint.

## SUMMARY OF ARGUMENT

1.    The Securities Litigation Uniform Standards Act ("SLUSA") does not bar Plaintiffs' claims because (1) the tortious interference claims do not depend on a "misrepresentation or omission"; (2) none of Plaintiffs' claims involve the "purchase or sale" of securities; and (3) SLUSA's "Delaware carve-out" exempts the fiduciary claim from the statute.

2.    Consistent with well-established law, the Funds' registration statements are binding contracts that prohibited concentration of more than 25% of the Funds' assets in a single security or industry.

3.     Defendants interfered with investors' contractual rights to diversification and investors' voting rights by causing the Funds to implement the Plan of Liquidation without a unitholder vote. Defendants' arguments that the contractual terms are unclear and that the Director Defendants did not actually approve the Beneficient transaction are meritless. Further, Defendants are liable because they lacked authority to implement the Plan of Liquidation.

4.     Plaintiffs have standing to assert direct claims for breach of fiduciary duty arising from the infringement of their voting rights.

5.     Defendants breached their fiduciary duties by knowingly depriving Plaintiffs of their voting rights and causing the Funds to violate their governing documents.

## FACTUAL BACKGROUND

The registration statements for the Core Alternatives Funds were contracts between unitholders and the Funds that prohibited the Funds from investing more than 25% of their assets in any single issuer or in any single industry. ¶36. The contractual prohibition against concentration of assets was designated a "fundamental policy" of the Funds, pursuant to section 13 of the 1940 Act, and could not be amended except by a majority vote of unitholders. ¶¶29-30; *see also* Br. Ex. B, pp. 69-70; 15 U.S.C. § 80a-13(a)(3).

In 2021, Defendants breached the contracts between investors and the Funds by orchestrating a transaction, labeled a "Plan of Liquidation," through which Defendants caused the Funds to exchange *their entire diversified portfolios* of securities for a single illiquid security in Beneficient—the Beneficient Series B-2 Preferred Units ("Beneficient Securities"). ¶48. The Plan of Liquidation was predicated on the Funds investing their entire portfolios in Beneficient. Defendants' December 2021 announcement regarding the Plan of Liquidation stated that "Hatteras was approached by [Beneficient] to purchase 100% of the investors' interest in the Fund." **Ex. A** at 1; ¶72. After considering tax liabilities, Hatteras decided to enter "into a plan of liquidation whereby [Beneficient] will buy 100% of Core assets." *Id.* The transaction breached the contractual limitations on investment concentration without a unitholder vote. Beyond that basic infirmity, the Directors approved it notwithstanding numerous red flags, including that Beneficient was an untested start-up and the subject of a major SEC investigation; the Beneficient Securities were unlisted and illiquid; and Beneficient's stated value was comprised almost entirely of "goodwill." ¶¶53-64.

In 2023, the value of the Beneficient Securities collapsed, causing hundreds of millions in investment losses. ¶84.

**ARGUMENT**

The Court should deny a rule 12(b)(6) motion where a plaintiff pleads facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs. *Id*.

## I.    SLUSA DOES NOT PRECLUDE PLAINTIFFS' CLAIMS

"SLUSA was enacted to close a 'loophole' that allowed plaintiffs to evade the more stringent procedural and substantive requirements imposed by the Private Securities Litigation Reform Act of 1995 by filing securities fraud class actions in state court." *Lee v. Pincus*, 2013 WL 6804640, at *2 (D. Del. Dec. 23, 2013). It is not intended to bar traditional state law causes of action. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006) (Courts must "not lose sight of the general presumption that Congress does not cavalierly pre-empt state-law causes of action") (cleaned up); *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 301 (3d Cir. 2005) ("Federal securities law . . . strikes a balance between uniform regulation of a national market and preservation of those areas traditionally left to state regulation, such as corporate, contract and fiduciary law.")

### A.    Plaintiffs Do Not Allege Or Depend On Misrepresentations

SLUSA does not preempt Plaintiffs' tortious interference claims (Counts I and II) because those claims do not rest on "an untrue statement or omission of a material

fact." *See* 15 U.S.C.A. § 77p(b)(1). Rather, Plaintiffs allege that Defendants (i) wrongfully interfered with investors' state law contractual right to vote on any change to fundamental investment policies and (ii) wrongfully caused the Fund to violate the terms of its contract requiring diversification, which was established by the Funds' registration statements.

Courts in the Third Circuit have held that SLUSA does not preempt state law breach of contract claims. *See Taksir v. Vanguard Grp.*, 903 F.3d 95 (3d Cir. 2018); *Walden v. Bank of New York Mellon Corp.*, 2021 WL 2317856, at *5 (W.D. Pa. June 7, 2021). Courts have rejected efforts by defendants to strategically "recast plaintiff's complaint as a securities fraud class action so as to have it preempted by SLUSA." *Pincus*, 2013 WL 6804640, at *2.[3]

Defendants' reliance on the non-binding decision in *Northstar Financial Advisors* illustrates the error in Defendants' argument. The plaintiff in *Northstar* alleged years of misrepresentations regarding compliance with investment guidelines that mirrored traditional securities claims. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 831 (9th Cir. 2018). The plaintiff brought claims on behalf of two classes of investors, a "Pre-Breach" class and a "Post-Breach" class.

---

[3] Defendants make much of the word "represented" in the Complaint (Br. at 6), but the cherry-picked examples are allegations of the terms of the registration statements and the undisputed actions Defendants took in connection with the Plan of Liquidation.

As to the Pre-Breach class, plaintiff alleged that "those investors were induced to hold their shares in reliance on inaccurate information," and thus the claims were "only possible because of the defendants' *concealment* of those breaches." *Id.* at 831, 832. As to the Post-Breach class, those investors purchased after the violation of the investment guidelines and therefore (i) "accept[ed] some performance" and "waived the breach," or (ii) did not know about the breaches, and thus could not have had a meeting of the minds and could not "maintain claims for breach." *Id.* at 833. The court ruled that the claims necessarily "depend on a misrepresentation or omission of a material fact." *Id.*

Here, unlike *Northstar*, there are no claims based on misrepresentations. The Funds stated for nearly two decades in successive registration statements that they were complying with their contractual diversification requirements. The Plan of Liquidation was implemented months after the last registration statement. The claims alleged in this case arise from that singular, *ultra vires* transaction, and Defendants' prior statements—which are not challenged in this action—are irrelevant to Defendants' violation of Plaintiffs' contractual rights. There is no "misrepresentation or omission" at issue that would trigger SLUSA.

### B. The "In Connection With" Requirement Is Not Satisfied As To Any Claims

Additionally, none of the claims in this action are "in connection with the purchase or sale," and therefore SLUSA does not apply. 15 U.S.C.A. § 78bb(f)(1).

As Defendants recognize, a prerequisite to this element is the existence of a securities "transaction." Br. p. 7 (citing *Dabit*). The "in connection with the purchase or sale" requirement requires a fraudulent misrepresentation or omission that is material to a decision to buy or to sell. *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014).

Plaintiffs' complaint does not allege any purchases or sales because none were permitted after approval of the Plan of Liquidation. ¶69. As set forth above, no purchases or sales *prior* to the Plan of Liquidation are at issue because Defendants had not breached the Funds' contractual requirements.

In *Shuster v. AXA Equitable Life Insurance Co.*, 2015 WL 4314378, at *2 (D.N.J. July 14, 2015), the court held that the "in connection with" requirement was not satisfied. There, the plaintiff purchased a life insurance policy that guaranteed a certain growth rate. *Id.* Seventeen years later, the defendant implemented a "volatility-management strategy," which reduced the policy's returns. *Id.* The court held that SLUSA did not apply because plaintiff "purchased her insurance contract nearly two decades before the events in question" and thus no securities transactions were at issue. *Id.* at *6.

Like *Shuster*, Defendants breached terms they established eighteen years earlier, and no claims turn on when Plaintiffs bought or sold units. SLUSA does not apply for this additional, independently dispositive reason.

### C.   The Delaware Carve-Out Applies To The Fiduciary Claim

SLUSA also does not bar Count III (breach of fiduciary duty) because of the "Delaware carve-out." SLUSA authorizes class actions "based upon the statutory or common law of the State in which the issuer is incorporated." 15 U.S.C. § 77p(d)(1)(A). This exception preserves the ability of state courts to hear internal affairs claims. *See Malone v. Brincat*, 722 A.2d 5, 13 (Del. 1998). The fiduciary claim in this case is premised on Defendants' unauthorized interference with investors' voting rights—paradigmatic "internal affairs" claims under Delaware law. *See, e.g.*, *CCSB Fin. Corp. v. Totta*, 302 A.3d 387, 404 (Del. 2023) ("[V]oting rights of stockholders in particular fall squarely within the purview of the internal affairs doctrine.") (internal quotation omitted); *In re Ultimate Escapes Holdings, LLC*, 551 B.R. 749, 760 (D. Del. 2016) ("[A] director's breach of fiduciary duty constitutes a matter of corporate internal affairs appropriate for regulation under governing state law.").

## II.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED TORTIOUS INTERFERENCE CLAIMS

### A.   The Registration Statements Are Contracts

The Funds' registration statements, which incorporate the Funds' prospectuses and statements of additional information ("SAIs"), constitute binding

contracts between investors and the Funds.[4] *See In re Charles Schwab Corp. Sec. Litig.*, 2009 WL 1371409, at *5 (N.D. Cal. May 15, 2009) (holding that a prospectus "constitute[s] an 'offer' under contract law" and citing cases); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1054-55 (9th Cir. 2015) (prospectus "constitutes an acceptance of the offer by the investor").

In *Northstar*, as in this case, the prospectus prohibited the fund "from investing twenty-five percent or more of [its] total assets in any one industry." 779 F.3d at 1042. The court held that the prospectus created a "contractual right [of the fund's investors] to have the Fund managed in accordance with" the fundamental investment policies because "[t]he Fund offered the shareholders the right to invest on these terms, and the shareholders accepted by so investing." *Id.* at 1052, 1054.

Defendants' reliance on *McKesson HBOC, Inc. v. N.Y. St. Common Ret. Fund, Inc.*, 339 F.3d 1087, 1089 (9th Cir. 2003) is misplaced. *McKesson* involved "a novel securities fraud claim" pursuant to which McKesson HBOC asserted claims against its own shareholders for unjust enrichment arising from a merger between McKesson and HBO & Company ("HBOC"). 339 F.3d at 1089. The court held that a prospectus in connection with the vote on the merger was not a contract because it did not govern the terms of the merger. *Id.* "Individual shareholders were not in a

---

[4] A registration statement for a registered investment company includes (A) the prospectus, (B) statement of additional information, and (C) other information. *See* Form N-2, available at https://www.sec.gov/files/formn-2.pdf.

position of contracting with McKesson, and shareholder ratification [of the merger] did not convert the Prospectus into a contract." *Id.* at 1093. As the court recognized in *Northstar*, the unique facts of *McKesson* are "clearly distinguishable" from cases involving registered funds. *Northstar*, 779 F.3d at 1053.

Defendants' citation to *Edwards v. Sequoia* is also not persuasive. *See* 2018 WL 6039815 (S.D.N.Y. Oct. 18, 2018). There, the defendant's prospectus did not contain any quantifiable limit to the fund's concentration in any industry or security. *Id*. at *2. The court ruled that the SEC's definition of concentrated as exceeding 25% was not an enforceable contractual provision because that restriction was never agreed upon by the investors and the fund. *Id*.[5]

## B. <u>Defendants Interfered With Plaintiffs' Contractual Rights</u>

Tortious interference provides a remedy where the defendant intentionally and wrongfully deprives the plaintiff of rights or benefits to which it is entitled pursuant to a contract with a third party. *See, e.g.*, *New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 140 (Del. Ch. 2023). To state a claim for tortious interference with contract, a plaintiff must plead "(1) a contract, (2) about which defendant

---

[5] Defendants' citation to *In re Intelogic Trace, Inc*., 174 F.3d 198 (5th Cir. Feb. 22, 1999) involves a bond issuance, not registered funds. Like *Edwards*, the prospectus at issue "did not contain any restrictive representations regarding the manner in which the proceeds would be used." *Id*.

knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Id*.

In this case, Plaintiffs allege that Defendants, as the Funds' investment advisor and directors, wrongfully interfered with (i) Plaintiffs' right to vote on any amendment to the Funds' contractual investment policies; and (ii) the contractual terms of the registration statements requiring diversification. Defendants' arguments do not support dismissal.

First, Plaintiffs have alleged contracts with the Funds. *See supra*, II.A. Defendants profess confusion as to the scope of the contract but admit that the registration statements "consist of both Prospectuses and SAIs." Br. at 11; *see also* ¶107. Those documents contain the terms applicable to the Funds' operations.

Second, Defendants argue—implausibly and in contradiction to the Complaint—that the Director Defendants approved the "Plan of Liquidation" but somehow not the "Beneficient transaction." Br. at 8-9. The Complaint alleges that the "the Director Defendants approved, a so-called 'Plan of Liquidation' for the Core Alternatives Funds *through which* the Funds exchanged their valuable portfolio holdings for illiquid, unlisted securities in Beneficient, a highly speculative start-up company." ¶48 (emphasis added). To the extent that the Director Defendants are now suggesting they were in the dark as to the core function of the Plan of Liquidation, that argument belies the facts and the Defendants' statements at the

time, which demonstrate that the Beneficient transaction was inextricably intertwined with the Plan of Liquidation.[6] For example, Defendants' announcement in December 2021 treated them as the same transaction. *See* Ex. A at 1 ("Hatteras has entered into a plan of liquidation whereby [Beneficient] will buy 100% of Core assets."); ¶72.

Third, Defendants argue that they are not "liable for actions they took as Fund agents," but ignore that their actions were *unauthorized* under the Funds' governing documents. Br. at 13-14. Defendants lacked authority to implement the Plan of Liquidation because the Funds' contracts and the 1940 Act prohibited such action without a unitholder vote. *See* 15 U.S.C. § 80a-13(a)(3); *see also Northstar*, 779 F.3d at 1051 (fundamental policies establish "a structural restriction on the power conferred on the Trustees . . . that can only be changed by a vote of the shareholders.") Defendants' conduct violated the Funds' fundamental policies.

Delaware law provides that Defendants are liable for tortious interference committed outside the scope of their authority. In *WyPie Invs., LLC v. Homschek*, a company entered into an agreement with investors that stipulated that capital would be used for "contractually restricted" purposes." 2018 WL 1581981 at *4 (Del.

---

[6] Defendants acknowledge this in related litigation. *See Young Women's Christian Association of Rochester and Monroe County v. Hatteras Funds, LP, et al.*, C.A. 2024-1264-JTL, D.I. 28 at 10 ("Under the Plan [of Liquidation], the Master Fund would sell its alternative asset portfolio to Beneficient in exchange for Preferred Series B2 Unit Accounts ('B-2 Units') of Beneficient stock").

Super. Mar. 28, 2018). The company's CEO was alleged to have tortiously interfered with the agreement by "diverting the proceeds . . . to fund [his] lavish lifestyle." *Id* at *14. The CEO argued that "directors of a contracting corporation cannot be held personally liable for inducing a breach of contract by their corporations." *Id*. The court upheld that the tortious interference claim because the allegations showed that the CEO "acted outside of his agency authority." *Id*. at *15; *see also Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 323 (Del. Ch. 2022) ("The limitations on the authority possessed by a board of directors or similar governing body establish the metes and bounds within which that body can exercise its discretionary authority. The board has no power to act outside those limits."); *Allen v. El Paso Pipeline GP Co.*, 90 A.3d 1097, 1108 (Del. Ch. 2014) ("Boards of directors have no discretion to exceed the intra-entity limitations on their authority.").

For similar reasons, the Director Defendants are also not entitled to the protections of the business judgment rule. *See Garfield*, 277 A.3d at 330-31 ("[T]he business judgment rule only applies when directors make a discretionary judgment that falls within the scope of their authority."); *see also Allen*, 90 A.3d at 1108 ("The possession of discretionary authority is a prerequisite for the policy-based deference of the business judgment rule. Without authority to take the action in question, a board has no business judgment to exercise.").

14

Defendants' case citations do not address the crux of this action: that Defendants exceeded the scope of their authority and are liable. In *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, the court acknowledged that defendants would be "liable for tortious interference with their own company's contract if they exceeded the scope of their authority." 752 A.2d 1175, 1183 (Del. Ch. 1999). There, however, the defendants were alleged to have "concocted a plan to circumvent this prohibition and to continue to make acquisitions"—not to have simply exceeded their authority. *Id.* at 1178-79. Likewise, in *Shearin v. E.F. Hutton Group, Inc.*, the plaintiff did not allege the defendant exceeded its authority. 652 A.2d 578, 591 (Del. Ch. 1994). Finally, in *Kuroda v. SPJS Holdings, L.L.C.*, the plaintiff did not make "factual allegations to support" the claim that defendants exceeded the scope of their authority except to say that they acted for personal reasons. 971 A.2d 872, 885 (Del. Ch. 2009). Here, Plaintiffs have alleged with particularity why Defendants' actions were *ultra vires* under the Funds' agreements and the 1940 Act.

## III. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR BREACH OF FIDUCIARY DUTY

### A. Plaintiffs Have Standing To Assert Claims Directly

Delaware courts have consistently held that "a wrongful impairment by fiduciaries of the stockholders' voting power," as alleged here, is "a personal injury to the stockholders, not the corporate entity." *In re MultiPlan Corp. S'holders Litig.*,

268 A.3d 784, 802 (Del. Ch. 2022) (internal citations omitted); *see also In re Gaylord Container Corp. S'holders Litig.*, 747 A.2d 71, 79 (Del. Ch. 1999) ("[A] wrongful impairment by fiduciaries of the stockholders' voting power or freedom works a personal injury to the stockholders, not to the corporate entity."); *Vejseli v. Duffy*, 2025 WL 1189867, at *6 (Del. Ch. Apr. 24, 2025) ("Delaware courts consistently regard a wrongful impairment by fiduciaries of the stockholders' voting power or freedom as causing a personal injury to the stockholders, not the corporate entity."); *Camac Fund L.P. v. Wagner*, C.A. No. 2023-0817-MTZ, at 17 (Del. Ch. Apr. 15, 2024) (TRANSCRIPT) (**Ex. B**) ("A wrong to a stockholder's legal rights" is "distinct from an injury caused to the corporation alone.").

Defendants' citation to *Brookfield* is off-base. The holding of that case—overruling *Gentile v. Rosette* and extinguishing "dual natured" claims as a matter of law—has no bearing on the claims here. *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1264 (Del. 2021). Moreover, *Brookfield* involved a classic derivative allegation. *Id.* at 1260. The plaintiffs alleged that "Brookfield caused [the Company] to issue its stock in the Private Placement for inadequate value, diluting both the financial and voting interest of the minority stockholders," and "the Company was damaged as a result." *Id.* at 1259-60. Likewise, in *Siegel*, the plaintiff also alleged a "classic overpayment claim, which is 'exclusively derivative.'" *Siegel v. Cantor Fitzgerald, L.P*, 2025 WL 1074604, at *6-10 (Del. Ch. Apr. 10, 2025). In these cases,

16

the voting dilution was a side effect of the overpayment claims, not the harm that the complaints sought to remedy.

Other decisions post-*Brookfield* have continued to distinguish voting interference claims from derivative dilution claims. In *Vejseli*, the court rejected defendants' argument under *Brookfield* because the "crux" of the case "center[ed] on the Board's allegedly inequitable interference with stockholders' [voting rights]." 2025 WL 1189867, at *6. Likewise, in *Camac Fund*, the court rejected defendants' attempt to "recast" an entrenchment claim into dilution where the plaintiff "plainly complain[ed] of a direct harm to [stockholders'] voting rights" and "could prevail without ... showing any injury to the corporation." Ex. B at 17.

Here, the crux of Plaintiff's fiduciary duty claim is the direct interference with investors' voting rights, a cognizable claim without regard to any harm to the Funds. Therefore, the claim is direct and not derivative.

### B.    Defendants Breached Their Fiduciary Duties

"[A]llegations that the directors knowingly exceeded their authority are sufficient to state a claim that the directors breached their duty of loyalty." *Garfield*, 277 A.3d at 330; *see also Allen*, 90 A.3d at 1108 ("Without authority to take the action in question, a board has no business judgment to exercise."); *Mehra v. Teller*, 2024 WL 4249822, at *8-12 (Del. Ch. Sept. 20, 2024) (defendant acted in bad faith

when he acted with "conscious disregard" of the "unambiguous language" of a governing agreement).

For the reasons set forth above, Defendants had no authority to implement the Plan of Liquidation absent a unitholder vote. Defendants do not genuinely dispute that point. Defendants knowingly exceeded the scope of their authority and thereby breached their fiduciary duties. *See Garfield*, 277 A.3d at 330.

## CONCLUSION

Defendants' Motion to Dismiss should be denied.


Dated:  November 7, 2025          Respectfully submitted,

                                 By:   */s/ William M. Alleman, Jr.*
                                 **MELUNEY ALLEMAN & SPENCE, LLC**
                                 William M. Alleman, Jr. (#5449)
                                 1143 Savannah Road, Suite 3-A
                                 Lewes, DE 19958
                                 (302) 551-6740
                                 bill.alleman@maslawde.com

                                 **MORRIS KANDINOV LLP**
                                 Aaron T. Morris (*pro hac vice*)
                                 Andrew W. Robertson (*pro hac vice*)
                                 William H. Spruance (#7118)
                                 305 Broadway, 7th Floor
                                 New York, NY 10007
                                 (212) 431-7473
                                 aaron@moka.law
                                 andrew@moka.law
                                 william@moka.law

**PARKS, CHESIN & WALBERT, P.C.**
M. Travis Foust (*pro hac vice*)
1355 Peachtree Street, Suite 2000
Atlanta, GA 30309
(404) 873-8000
tfoust@pcwlawfirm.com

*Attorneys for Plaintiffs*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 3,970 words, which were counted by using the word count feature in Microsoft Word, in 14-pt Times New Roman font.  The word count includes only the body of the brief inclusive of any footnotes and headings.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.


<u>*/s/ William M. Alleman, Jr.*</u>
William M. Alleman, Jr. (#5449)