IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN DAVID MILEY, III, and DR. STEVEN RICHARD SMITH, <br><br> *Plaintiffs,* <br><br> v. <br><br> HATTERAS FUNDS, LP; HATTERAS INVESTMENT PARTNERS, LP; DAVID B. PERKINS; H. ALEXANDER HOLMES; STEVE E. MOSS; GREGORY S. SELLERS; and THOMAS MANN, <br><br> *Defendants.* | Civil Action No. 1:25-cv-00672-CFC |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

Dated: November 21, 2025

OF COUNSEL:

Joshua L. Solomon
Phillip Rakhunov
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, Massachusetts 02110
(617) 439-9800
jsolomon@psdfirm.com
prakhunov@psdfirm.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Brett M. Mccartney (No. 5208)
Mutaz A. Ali (No. 7155)
600 N. King St., Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
bmccartney@bayardlaw.com
mali@bayardlaw.com

*Attorneys For Defendants Alexander Holmes, Steven E. Moss, Gregory S. Sellers, And Thomas Mann*

OF COUNSEL:

Melanie B. Dubis
Corri A. Hopkins
PARKER POE ADAMS &
BERNSTEIN, LLP
301 Fayetteville Street
Suite 1400
Raleigh, North Carolina
(919) 828-0564
melaniedubis@parkerpoe.com
corrihopkins@parkerpoe.com

YOUNG CONAWAY STARGATT &
TAYLOR LLP

Elena C. Norman  (No. 4780)
Richard J. Thomas (No. 5073)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
enorman@ycst.com
rthomas@ycst.com
rvrana@ycst.com

*Attorneys For Defendants Hatteras Investment Partners, L.P. F/K/A Hatteras Funds, L.P. And David B. Perkins*

# **TABLE OF CONTENTS**

I. SLUSA Applies to Plaintiffs' Claims ............................................................. 1

    A. Misrepresentations or Omissions ......................................................... 1

    B. "In Connection With" ........................................................................... 3

    C. Delaware Carve-Out ............................................................................. 5

II. Plaintiffs Plead No Plausible Claim Against the Directors ............................ 6

III. Plaintiffs' Tortious Interference Claims are Deficient ................................... 7

IV. Plaintiffs' Fiduciary-Duty Claim Is Derivative ............................................ 10

CONCLUSION ....................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    521 F.3d 1278 (10th Cir. 2008) ............................................................................. 1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 7

*Brookfield Asset Management, Inc. v. Rosson*,
    261 A.3d 1251 (Del. 2021) ................................................................................. 11

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ............................................................................... 6

*In re Charles Schwab Corp. Securities Litigation*,
    No. 08-01510 WHA, 2009 WL 1371409 (N.D. Cal. May 15,
    2009). (Opp. .) ..................................................................................................... 9

*Edwards v. Sequoia Fund, Inc.*,
    18-4501-GBD, 2018 WL 6039815 (S.D.N.Y. Oct. 18, 2018) ............................. 8

*Kiger v. Mollenkopf*,
    No. 21-409-RGA, 2021 WL 5299581 (D. Del. Nov. 15, 2021) ........................... 6

*Lee v. Pincus*,
    No. CV 13-834-SLR, 2013 WL 6804640 (D. Del. Dec. 23, 2013) ..................... 3

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ........................................................................................ 3, 4

*Northstar Fin. Advisors Inc. v. Schwab Invests.*,
    08-CV-04119-LHK, 2016 WL 706018 (N.D. Cal. Feb. 23, 2016) ...................... 2

*Northstar Financial Advisors Inc. v. Schwab Investments*,
    779 F.3d 1036 (9th Cir. 2015) ............................................................................. 8

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
    904 F.3d 821 (9th Cir. 2018) ....................................................................... passim

*Rowinski v. Salomon Smith Barney Inc.*,
   398 F.3d 294 (2005) ................................................................................... 1, 2

*Shuster v. AXA Equitable Life Insurance Co.*,
   No. 14-8035, 2015 WL 4314378 (D.N.J. July 14, 2015) ................................ 4, 5

*Taksir v. Vanguard Group*,
   903 F.3d 95 (3d Cir. 2018) ............................................................................... 3

*Walden v. Bank of N.Y. Mellon Corp.*,
   No. 2:20-CV-01972-CRE, 2021 WL 2317856 (W.D. Pa. June 7,
   2021) ................................................................................................................ 3

*WyPie Invs., LLC v. Homschek*,
   No. N14C-08-140, 2018 WL 1581981 (Del. Super. Mar. 28, 2018) ............... 10

**Statutes**

15 U.S.C. § 77p(d)(1)(B) ..................................................................................... 5, 6

I.  **SLUSA APPLIES TO PLAINTIFFS' CLAIMS**

   A.  **Misrepresentations or Omissions**

Plaintiffs argue that their tortious-interference claims (Counts I and II) are not based on misrepresentations or omissions. They make no such argument for their fiduciary-duty claim (Count III), implicitly conceding that SLUSA's misrepresentation element is satisfied for that claim. This concession is telling, as all three claims rely on the same factual allegations. As set forth in Defendants' opening brief, (Op. Br. at 4), SLUSA looks to alleged factual bases, not whether elements of claims require misrepresentations.

Plaintiffs are thus simply wrong when they write, for example, that "SLUSA does not preempt state law breach of contract claims." (Opp. at 6.) It can, and often does. The Third Circuit addressed a breach-of-contract claim in upholding dismissal in *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (2005). Nor is fraud more generally a SLUSA requirement – only allegations of misrepresentation are needed. Thus, scienter and reliance, for example, elements of some misrepresentation-based claims, are not required. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1287 (10th Cir. 2008) ("Plaintiffs did not have to allege scienter or reliance for SLUSA to apply."). The opposition's argument that certain causes of action are outside SLUSA's scope has long been rejected.

Defendants' opening brief pointed to the many allegations behind Plaintiffs' claims that involve alleged misrepresentations (or omissions). (*See* Op. Br. at 6-7.)

1

While Plaintiffs dismiss these as "cherry-picked," (Oppos. at 6 n.3), such allegations permeate the SAC, beyond those exemplars. (*See, e.g.*, SAC ¶¶ 65, 66, 73, 74.) The SAC even defines the very class that Plaintiffs seek to represent as confined to those who "invested in Funds that *were marketed* pursuant to materially identical Registration Statements." (SAC ¶ 90 (emphasis added).)

Such factual bases for the claims put this case on all fours with *Northstar Financial Advisors, Inc. v. Schwab Investments*, 904 F.3d 821 (9th Cir. 2018). The opposition struggles to distinguish *Northstar*. As in that case, Plaintiffs here accuse Defendants of saying one thing in Registration Statements and then doing another. The District Court in *Northstar* described that exact type of allegation as "a misrepresentation in the most classic sense." *Northstar Fin. Advisors Inc. v. Schwab Invests.*, 08-CV-04119-LHK, 2016 WL 706018, at *8 (N.D. Cal. Feb. 23, 2016). Similarly, as did plaintiffs in *Northstar*, the SAC accuses Defendants of hiding (i.e. making omissions about) what they did after they did it. *Northstar*, 904 F.3d at 832. Because "allegations of a material misrepresentation serve as the *factual predicate* of a state law claim, the misrepresentation prong is satisfied." *Rowinski*, 398 F.3d at 300 (emphasis added).

Nor do the three cases the opposition cites support its argument. This Court's decision in *Lee v. Pincus*, No. CV 13-834-SLR, 2013 WL 6804640 (D. Del. Dec. 23, 2013), reiterates well-established law that SLUSA looks to whether

2

"misrepresentation is a 'factual predicate' of the claim," such that it is "'one that gives rise to liability, not merely an extraneous detail.'" *Id.* at *2 (quoting *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008). The Court found no misrepresentation because, in contrast to what the SAC alleges, "defendants told plaintiff and the world exactly what they were doing in the registration statement for the second offering." *Id.* Nor is either of the other two cases the opposition cites relevant. For example, in *Taksir v. Vanguard Group,* 903 F.3d 95, 99 (3d Cir. 2018), the Court found SLUSA inapplicable based on the materiality requirement for the "in connection with" element, *not* lack of misrepresentation. *See also Walden v. Bank of N.Y. Mellon Corp.*, No. 2:20-CV-01972-CRE, 2021 WL 2317856, at *5 (W.D. Pa. June 7, 2021) (finding "in connection with" not satisfied).

B.   **"In Connection With"**

The opposition similarly misapplies SLUSA's "in connection with" standard, failing to recognize the term's breadth as the Supreme Court defined it in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006). Several of the SAC's allegations make "in connection with" easily satisfied, including that Plaintiffs (1) expressly seek recovery of investment losses, (SAC ¶¶ 82-84, 103, 115, 124); (2) rely extensively on publicly-made statements within securities filings (i.e. Registration Statements), (*id.* ¶ 28); (3) define the class as consisting *entirely* of those who "invested in Funds that were marketed pursuant to materially identical

3

Registration Statements," (*id.* ¶ 90); and (4) allege a relationship with Defendants arising *exclusively* from Plaintiffs having purchased securities, (*id.*).

Given these allegations, the opposition's argument that there were no purchases during what the opposition defines as the "relevant" period – "after approval of the Plan of Liquidation" – cannot be accepted. (Oppos. at 8.) The SAC unquestionably alleges pre-Plan facts necessary to its claims. These allegations include that plaintiffs invested in the Funds pursuant to Registration Statements containing representations about diversification, thereby producing in investors "long-held expectations" that the SAC asserts were not honored. (*See, e.g.*, SAC ¶¶ 28-37, 65, 66, 85.) But for those securities purchases, Plaintiffs would not be members of the class they purport to represent, or have suffered the investment losses they seek to recover. Under *Dabit*, that is sufficient.

Plaintiffs cite a single case, *Shuster v. AXA Equitable Life Insurance Co.*, No. 14-8035, 2015 WL 4314378 (D.N.J. July 14, 2015), to support their "in connection with" argument. But *Shuster* involved an alleged misrepresentation made in a nonpublic filing with a state agency, not a representation to the investing public. *Id.* at *6. The court contrasted that situation to where "the Complaint alleges 'a material misrepresentation or omission disseminated to the public in a medium upon which a reasonable investor would rely.'" *Id.* at *9 (quoting *Rowinski*, 398 F.3d at 302). Here, the representations alleged appeared in Registration Statements, pursuant to which,

4

the SAC alleges, the Funds "were marketed" to investors, and had been "long touted in marketing the Funds." (SAC ¶¶ 90, 66.).

### C. Delaware Carve-Out

In a mere three sentences, Plaintiffs invoke SLUSA's "Delaware carve-out." The carve-out provides that actions are not susceptible to SLUSA if they (1) are "'based upon the statutory or common law of the State in which the issuer is ... organized,'" *and* (2) constitute "'permissible actions.'" *Northstar*, 904 F.3d at 833-34 (quoting 15 U.S.C. § 77p(d)(1)(A)). Plaintiffs overlook the second requirement, making no argument as to how they would satisfy it. This action does not constitute either of the two types of "permissible actions" the statute permits. It does not involve "the purchase or sale of securities by the issuer . . . *exclusively* from or to holders of equity securities of the issuer," 15 U.S.C. § 77p(d)(1)(B) (emphasis added), such as in claims related to a company's re-purchasing shares. To the contrary, the SAC expressly alleges that misrepresentations were made to the investing public generally, in Registration Statements. Nor does this case involve representations to equity holders concerning "decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights." *Id.* Plaintiffs claim they were *denied* a vote, not that they were misled when voting. The carve-out does not apply. *See Northstar*, 904 F.3d at 833-34 (rejecting Delaware carve-out).

5

## II. PLAINTIFFS PLEAD NO PLAUSIBLE CLAIM AGAINST THE DIRECTORS

Plaintiffs fail to *plausibly* allege any actionable conduct by the Directors. In response to Defendants' argument that the Plan of Liquidation did not require the Beneficient transaction, and that the SAC's *only* allegation as to the Directors is that they "approved" the Plan, the opposition points to the allegation that the transaction was conducted pursuant to the Plan. (Opp. at 12-13.) That allegation, however, does not plausibly amount to actionable conduct by the Directors personally, as it does not explain who did what to cause the Plan to be implemented through the specific Beneficient transaction.

While unclear, the opposition may be suggesting one of two things. Its argument could mean that Plaintiffs' position is that the Plan of Liquidation itself *required* or expressly called for the Beneficient transaction specifically, such that approving the Plan equated to approving the transaction. That argument, however, is belied by the Plan itself, which the SAC incorporates through reliance. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). That document makes clear on its face that the Directors were *not* approving any specific transaction, but left the details to the adviser. *See Kiger v. Mollenkopf*, No. 21-409-RGA, 2021 WL 5299581, at *1 (D. Del. Nov. 15, 2021) ("[T]he court need not accept as true allegations in the complaint contradicted by documents on which the complaint relies."). Alternatively, the opposition may be suggesting the Directors

6

took further action beyond approving the Plan, by which *they* chose the Beneficient transaction as the specific mechanism to implement it. That allegation, however, appears nowhere in the SAC. The SAC alleges nothing more than that the Directors acted as a Board to approve the Plan. The SAC does not plausibly allege actionable conduct by the Directors.

While that pleading failure is dispositive as to the Directors on all claims, it is fatal to the fiduciary-duty claim for the additional reason that a mere allegation of approving a Plan cannot, standing alone, satisfy the obligation to plead gross negligence or recklessness.[1] The sum total of Plaintiffs' argument in response is that "Defendants knowingly exceeded the scope of their authority and thereby breached their fiduciary duties." (Opp. at 18.) Those are mere "labels and conclusions," and thus "formulaic recitation of the elements of" claims, not *factual* pleadings necessary to make a claim "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For example, Plaintiffs plead no facts suggesting that, even if the Directors exceeded their authority, they did so knowingly, as they assert in conclusory language.

### III.   PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS ARE DEFICIENT

To claim that the Registration Statements were contracts, Plaintiffs rely primarily on an earlier *Northstar* decision, *Northstar Financial Advisors Inc. v.*

---

[1] Plaintiffs do not deny the SAC's lack of pleaded facts suggesting Director self-interest, lack of independence, or bad faith.

7

*Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015). To do so, Plaintiffs take isolated statements from that opinion out of context, ignoring its actual holding. There, the right that the court treated as contractual arose *not* simply by virtue of its appearance in a prospectus, but because the shareholders had previously been solicited to vote on the policies at issue, and voted to put them in place, pursuant to a proxy solicitation: "In sum, we conclude that *the mailing of the proxy statement* and the adoption of the two fundamental investment policies *after the shareholders voted to approve them*, and the annual representations by the Fund that it would follow these policies are sufficient to form a contract . . . ." *Id.* at 1054 (emphases added). The SAC alleges no proxy solicitation or prior shareholder vote. *Northstar* has been distinguished on this exact ground, as well as based on the specific structure of funds there, which were organized as Massachusetts business trusts, also not at issue here. *See Edwards v. Sequoia Fund, Inc.*, 18-4501-GBD, 2018 WL 6039815, at *3 (S.D.N.Y. Oct. 18, 2018) (rejecting treatment of prospectus as a contract and finding that "[t]he *Northstar* plaintiffs' claim for breach of contract was based, in part, on a proxy statement mailed to the shareholders," and that "the Ninth Circuit relied upon the unique nature of the relationship created by the business trust and the shareholders' approval of the proposals").

The only other case the opposition cites for its assertion that the Registration Statements "constitute binding contracts between investors and the Funds" is *In re*

8

*Charles Schwab Corp. Securities Litigation*, No. 08-01510 WHA, 2009 WL 1371409 (N.D. Cal. May 15, 2009). (Opp. at 9-10.) The opposition incorrectly describes *Schwab* as "holding that a prospectus 'constitute[s] an 'offer' under contract law,'" (Oppos. at 10), which quotes *Schwab* out of context. The relevant passages actually reads: "Granted, in *certain* circumstances prospectuses *can* constitute a contract. *In the tender offer situation*, for example, a binding contract is created when the shareholder tenders his or her securities in accordance with the terms of the offer. *In that situation*, the prospectus has been found to constitute an 'offer' under contract law." *Schwab*, 2009 WL 1371409, at *5 (emphases added). The court went on to *reject* plaintiff's contention that the securities filings constituted contracts in that case. *Id.*

Even assuming *arguendo* that the Registration Statements were contracts, Defendants cannot interfere with them through actions taken as corporate agents. The opposition repeats the SAC's conclusory assertion that the Directors were not acting in such capacities because the very documents they allege the Funds breached prohibited the Funds from doing what they did, making Director approval beyond the Directors' legitimate authority. The law does not permit such a tautology. Plaintiffs' reasoning would mean that any time an entity is accused of breaching an agreement, the fact of breach would make the corporate agents who acted on behalf of the company automatically susceptible to a tortious-interference claim for want

9

of authority. That is decidedly not the law. As set forth in Defendants' opening brief, more is required to remove corporate action from the scope of individual actors' "authority." (*See* Op. Br. at 13-15.) In fact, the primary case on which the opposition relies itself makes clear that bad faith or malicious conduct is required – there, a CEO using corporate funds not for corporate purposes, but "to fund [his] lavish lifestyle." *WyPie Invs., LLC v. Homschek*, No. N14C-08-140, 2018 WL 1581981, at *14 (Del. Super. Mar. 28, 2018). Beyond a wholly conclusory assertion of personal benefit, the SAC alleges no facts from which one could conclude that the Directors acted in bad faith.

## IV. PLAINTIFFS' FIDUCIARY-DUTY CLAIM IS DERIVATIVE

Plaintiffs' response to Defendants' standing argument is that "the crux" of Plaintiffs' claims is interference with voting rights. That label evades the substantive analysis that *Tooley* requires. As demonstrated in Defendants' opening brief, the SAC expressly asserts that the mechanism by which unitholders were harmed was the Funds concentrating their investments into Beneficient, which then "cratered" in value, "resulting in a virtually complete loss for investors." (SAC ¶¶ 82-83.) The SAC seeks to recover *that* harm specifically, which is by definition derivative. Plaintiffs' attempt to frame claims as impairment of their voting franchise does not make their claims direct when they seek the relief they do. At best, Plaintiffs are attempting a "dual-natured" claim, which the Delaware Supreme Court held in

10

*Brookfield Asset Management, Inc. v. Rosson*, 261 A.3d 1251 (Del. 2021), was no longer a viable way to avoid *Tooley*'s inquiry. Because Plaintiffs fail to limit themselves to "an injury that is *not dependent* on an injury to the corporation," *id.* at 1273, the claims are derivative.

## CONCLUSION

Defendants respectfully request that the Court dismiss the SAC with prejudice.

| | |
|---|---|
| Dated: November 21, 2025 | BAYARD, P.A. |
| OF COUNSEL: | /s/ Stephen B. Brauerman<br>Stephen B. Brauerman (No. 4952) |
| Joshua L. Solomon<br>Phillip Rakhunov<br>POLLACK SOLOMON DUFFY LLP<br>31 St. James Avenue, Suite 940<br>Boston, Massachusetts 02110<br>(617) 439-9800<br>jsolomon@psdfirm.com<br>prakhunov@psdfirm.com | Brett M. Mccartney (No. 5208)<br>Mutaz A. Ali (No. 7155)<br>600 N. King St., Suite 400<br>Wilmington, Delaware 19801<br>(302) 655-5000<br>sbrauerman@bayardlaw.com<br>bmccartney@bayardlaw.com<br>mali@bayardlaw.com |
| | ***Attorneys For Defendants Alexander Holmes, Steven E. Moss, Gregory S. Sellers, And Thomas Mann*** |

11

| | |
|---|---|
| OF COUNSEL:<br><br>Melanie B. Dubis<br>Corri A. Hopkins<br>PARKER POE ADAMS &<br>BERNSTEIN, LLP<br>301 Fayetteville Street<br>Suite 1400<br>Raleigh, North Carolina<br>(919) 828-0564<br>melaniedubis@parkerpoe.com<br>corrihopkins@parkerpoe.com | YOUNG CONAWAY STARGATT & TAYLOR LLP<br><br> /s/ Robert M. Vrana<br>Elena C. Norman  (No. 4780)<br>Richard J. Thomas (No. 5073)<br>Robert M. Vrana (No. 5666)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>(302) 571-6600<br>enorman@ycst.com<br>rthomas@ycst.com<br>rvrana@ycst.com<br><br>***Attorneys For Defendants Hatteras Investment Partners, L.P. F/K/A Hatteras Funds, L.P. And David B. Perkins*** |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN DAVID MILEY, III, and DR. STEVEN RICHARD SMITH,<br><br>　　*Plaintiffs,*<br><br>　　v.<br><br>HATTERAS FUNDS, LP; HATTERAS INVESTMENT PARTNERS, LP; DAVID B. PERKINS; H. ALEXANDER HOLMES; STEVE E. MOSS; GREGORY S. SELLERS; and THOMAS MANN,<br><br>　　*Defendants,* | Civil Action No. 1:25-cv-00672-CFC<br><br>Removed from the Court of Chancery of the State of Delaware |

## CERTIFICATION OF COMPLIANCE
## WITH TYPE, FONT, AND WORD LIMITATIONS

　　This brief complies with the Court's Standing Order Regarding Briefing in All Cases. It has been prepared in Times New Roman 14-point type, and contains 2,470 words, which were counted by Microsoft Word.

Dated: November 21, 2025                     /s/ Stephen B. Brauerman
　　　　　　　　　　　　　　　　　　　　　　Stephen B. Brauerman (No. 4952)

1