IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN DAVID MILEY, III;<br>DR. STEVEN RICHARD SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>HATTERAS FUNDS, L.P.;<br>HATTERAS INVESTMENT<br>PARTNERS, L.P.; DAVID B.<br>PERKINS; H. ALEXANDER<br>HOLMES; STEVE E. MOSS;<br>GREGORY S. SELLERS;<br>THOMAS MANN,<br><br>Defendants. | Civil Action No. 25-672-CFC |

## MEMORANDUM ORDER

Pending before me is Defendants' Motion to Transfer Under 28 U.S.C.

§ 1404. D.I. 9. Defendants Hatteras Funds, L.P., Hatteras Investment Partners,

L.P., David B. Perkins, H. Alexander Holmes, Steve E. Moss, Gregory S. Sellers,

and Thomas Mann seek to transfer this action to the U.S. District Court for the

Eastern District of North Carolina, Raleigh Division. D.I. 9.

## I.    BACKGROUND

It is undisputed that Hatteras Investment Partners, L.P., formerly known as

Hatteras Funds, L.P., (Fund-Defendant) is a limited partnership organized in

Delaware with its principal place of business in Raleigh, North Carolina.

D.I. 41 ¶ 7; D.I. 1 ¶ 7; D.I. 15.  It is also undisputed that Fund-Defendant is an

investment boutique that manages several investment funds, including Hatteras

Core Alternatives Fund, L.P., Hatteras Core Alternatives TEI Fund, L.P., Hatteras

Core Alternatives Institutional Fund, L.P., Hatteras Core Alternatives TEI

Institutional Fund, L.P. (collectively, Feeder Funds), and Hatteras Master Fund,

L.P (Master Fund, and together with the Feeder Funds, the Funds).  D.I. 41 ¶ ¶ 7,

14, 18; D.I. 10 at 1–2.  Perkins, Holmes, Moss, Sellers, and Mann (collectively,

Director-Defendants) are members of the board of directors of the Master Fund.

D.I. 12; D.I. 13; D.I. 14; D.I. 15; D.I. 16.  Plaintiffs John David Miley, III and

Dr. Steven Richard Smith are citizens of Indiana and have owned units of two of

the Feeder Funds, Hatteras Core Alternatives Institutional Fund, L.P. and Hatteras

Core Alternatives TEI Fund, L.P., since at least 2021.  *See* D.I. 1-1; D.I. 1-4 at 97–

98.

On April 17, 2024, Plaintiffs filed a Verified Class Action Complaint against

Director-Defendants alleging breach of fiduciary duty in the Delaware Court of

Chancery.  D.I. 1-4 at 48.  They filed the First Amended Complaint on May 16,

2025.  D.I. 1-3 at 22.  In the First Amended Complaint, Plaintiffs added

Fund-Defendant and alleged, instead, tortious interference with contract and unitholder voting rights. *See* D.I. 1-3 at 1–22.

On May 30, 2025, Perkins and Fund-Defendant removed the case to this Court under the Class Action Fairness Act of 2005. D.I. 1 at 1. On July 1, 2025, Defendants moved pursuant to § 1404(a) to transfer this case to the Eastern District of North Carolina. D.I. 9. And on July 18, 2025, Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' First Amended Complaint. D.I. 19.

On August 26, 2025, Plaintiffs moved for leave to file a Second Amended Complaint. D.I. 32. On September 17, 2025, Defendants stipulated to the filing of the Second Amended Complaint, and the parties agreed that Defendants' motion to dismiss the First Amended Complaint was moot. D.I. 39. Plaintiffs filed the operative Second Amended Complaint (the Complaint) on September 18, 2025, alleging both tortious interference with contract and unitholder rights and breach of fiduciary duty against all Defendants. D.I. 41. Defendants' motion to transfer remains before me.[1]

_____

[1] The parties fully briefed the motion to transfer before Plaintiffs filed the operative Complaint—i.e., when the only claim was tortious interference with contract and unitholder rights. The reintroduction of the breach of fiduciary claim, however, does not change the transfer analysis because the alleged conduct is substantially the same and because Defendants concede that Delaware law would apply to a breach of fiduciary duty claim. *See* D.I. 10 at 18.

Plaintiffs allege that on December 7, 2021, Fund-Defendant proposed, and Director-Defendants approved, "a so-called 'Plan of Liquidation'" "through which the Funds exchanged their valuable portfolio holdings for illiquid, unlisted securities in Beneficient, a highly speculative start-up company." D.I. 41 ¶ 48. Plaintiffs allege that this transaction violated the Feeder Funds' registration statements and "exposed [them] to unreasonable risks." D.I. 41 ¶¶ 36, 49. They further allege that the transaction "secured benefits" for Defendants, as Beneficient agreed to provide capital for new investment funds to be managed by Defendants. D.I. 41 ¶ 49. At the time of the transaction, the Beneficient securities were reportedly valued at $10 per share, D.I. 41 ¶ 51, but "[a]s of the date this action was filed, [the securities were] trading at a price of $0.078 per share, resulting in a virtually complete loss for investors," D.I. 41 ¶ 82.

## II. DISCUSSION

### A. Legal Standard

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As the party seeking the transfer, Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy.

"[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

The proper interests to be weighed in deciding whether to transfer a case under § 1404(a) are not limited to the three factors recited in the statute (i.e., the convenience of the parties, the convenience of the witnesses, and the interests of justice). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the court in *Jumara* identified twelve interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted).  The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the

> familiarity of the trial judge with the applicable state law
> in diversity cases.

*Id.* at 879–80 (citations omitted).  As the parties have not identified relevant factors

beyond these twelve interests, I will balance the *Jumara* factors in deciding

whether to exercise the discretion afforded me by § 1404(a).

### B.    Analysis of the *Jumara* Factors

I examine each *Jumara* factor in turn.

### 1.    Plaintiffs' Forum Preference

This factor clearly weighs against transfer.  In *Shutte*, the Third Circuit held

that "[i]t is black letter law that a plaintiff's choice of a proper forum is a

paramount consideration in any determination of a transfer request" brought

pursuant to § 1404(a), and that this choice "should not be lightly disturbed."  431

F.2d at 25 (internal quotation marks and citation omitted).  The parties have not

cited, and I am not aware of, any Third Circuit or U.S. Supreme Court case that

overruled *Shutte*.  *Jumara* cited *Shutte* favorably and reiterated *Shutte*'s admonition

that "the plaintiff's choice of venue should not be lightly disturbed."  *Jumara*, 55

F.3d at 879 (internal quotation marks and citation omitted).  Thus, binding Third

Circuit law compels me to treat Plaintiffs' forum choice as "a paramount

consideration" in the § 1404(a) balancing analysis.

Defendants argue that "Plaintiffs' choice of forum warrants little, if any,

deference" because "Plaintiffs are both residents of Indiana."  D.I. 10 at 10.  But I

am not persuaded that Plaintiffs' choice should be discounted or minimized

because they have limited physical connections with Delaware.[2]  I will instead

follow Judge Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392

F. Supp. 761 (D. Del. 1975).  Like Judge Stapleton, I read *Shutte*'s "statement of

'black letter law' as an across-the-board rule favoring plaintiff's choice of forum."

*Id.* at 763.  As Judge Stapleton explained in rejecting the "home-turf" rule argued

by the defendant in *Burroughs*:

> The court's decision in *Shutte* to give weight to the
> plaintiff's choice of forum is not an application of any of
> the criteria recited in [§ 1404(a)].  Assuming jurisdiction
> and proper venue, weight is given to plaintiff's choice
> because it is plaintiff's choice and a strong showing under
> the statutory criteria in favor of another forum is then
> required as a prerequisite to transfer.  One can perhaps
> debate whether plaintiff's choice should be given any
> weight at all in a transfer context, but assuming it is to be
> given some weight in cases where the plaintiff lives in the
> forum state, it is difficult to see why it should not also be
> given weight when the plaintiff lives in [another] state. . . .
> [The] plaintiff's contact or lack thereof with the forum
> district will ordinarily be reflected in the 'balance' of
> conveniences, but that contact, per se, is unrelated to
> anything in *Shutte*, or Section 1404(a).

*Id.* at 763 n.4.

---

[2] Defendants also argue for the first time in their reply brief that Plaintiffs' choice of forum should also be discounted because "Plaintiffs chose the Court of Chancery, from which this action was removed." D.I. 21 at 2.  Defendants forfeited this argument by not including it in their opening brief, so I will not address it.

I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or even when the facts underlying the controversy occurred elsewhere. I do not mean to suggest that these two latter considerations will not affect the overall transfer analysis. On the contrary, because these considerations are subsumed and given weight under *Jumara* factors three (whether the claim arose elsewhere), four (convenience of the parties), five (convenience of the witnesses), six (location of books and records), eight (practical considerations that could make the trial easy, expeditious, or inexpensive), and ten (the local interest in deciding local controversies at home), a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer. I will thus follow *Shutte* and give Plaintiffs' forum choice paramount consideration in balancing the *Jumara* factors.

### 2.    Defendants' Forum Preference

This factor favors transfer.

### 3.    Whether the Claims Arose Elsewhere

This factor is neutral. Neither party alleges that the events giving rise to the

claims occurred in Delaware. *See* D.I. 41 at 11–17; D.I. 10 at 12. Defendants

argue that the claims arose in North Carolina, citing that four of the five

Director-Defendants reside there and the Fund-Defendant is headquartered there.

D.I. 10 at 12. It is unclear at this early stage, however, where the alleged conduct

occurred.

### 4.    Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor weighs slightly against transfer. "[A]bsent some showing of a

unique or unexpected burden, a company should not be successful in arguing that

litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor*

*Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). Neither party suggests that I

should treat limited partnerships differently than corporations with respect to this

factor. The same principle thus applies here.

Defendants have shown that there would be advantages to litigating this case

in the Eastern District of North Carolina as opposed to Delaware. *See* D.I. 10

at 14. Neither party has a physical presence in Delaware. Plaintiffs reside in

Indiana, D.I. 1-1; D.I. 1-4 at 97–98, Fund-Defendant is headquartered in North

Carolina, D.I. 15, and all but one of the Director-Defendants reside in North

Carolina, *see* D.I. 12; D.I. 13; D.I. 14; D.I. 15; D.I. 16. And none of the claims

arose in Delaware.

Still, because Defendants, a limited partnership organized in Delaware and individuals who agreed to serve on the board of directors of a Delaware entity, have not established that Delaware is a uniquely or unexpectedly burdensome forum, the convenience of the parties weighs slightly against transfer. *See ADE*, 138 F. Supp. at 573.

### 5.    Convenience of the Witnesses

This factor, which carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora," *Jumara*, 55 F.3d at 879, is neutral.  "[W]itnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).  Nothing in the parties' filings suggests that anyone—whether they be third parties or employees—would be unwilling to testify at trial in Delaware. Accordingly, following *Jumara*, even though neither party has identified a witness who resides in Delaware and it is undisputed that many of the witnesses are located in North Carolina, D.I. 10 at 15; D.I. 17 at 14, I will give this factor no weight and treat it as neutral.

### 6.    Location of Books and Records

*Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be

produced in the alternative forum." 55 F.3d at 879. Defendants have not identified with particularity any evidence that could not be produced in Delaware. *See* D.I. 10 at 15. On the other hand, it is undisputed that most of Defendants' books and records are in North Carolina. *See* D.I. 10 at 15; D.I. 17 at 16. Thus, this factor is neutral.

### 7.    Enforceability of the Judgment

It is undisputed that judgments from this District and the Eastern District of North Carolina would be equally enforceable. D.I. 10 at 16; D.I. 17 at 17. Thus, this factor is neutral.

### 8.    Practical Considerations

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Although I did not consider issues of economic cost and logistical convenience with respect to potentially relevant Fund-Defendant employees when I assessed the "witness convenience" factor, it is appropriate to consider these issues in assessing "practical considerations." *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, 2013 WL 4496644, at *7 (D. Del. Aug. 21, 2013); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 475–76 (D. Del. 2013).

This factor favors transfer. Neither Plaintiffs nor Defendants have a connection with Delaware other than Fund-Defendant's status as a Delaware

11

limited partnership. By contrast, all but one of the Defendants are based in North

Carolina. *See* D.I. 12; D.I. 13; D.I. 14; D.I. 15; D.I. 16. And Fund-Defendant's

employees are all in North Carolina. D.I. 15. Meanwhile, the Eastern District of

North Carolina is likely just as convenient for Plaintiffs, who reside in Indiana, as

Delaware. *See* D.I. 1-1; D.I. 1-4 at 97–98; D.I. 11 (mapping the drive from

Indianapolis, Indiana to Wilmington, Delaware and Raleigh, North Carolina,

respectively).

### 9.    Relative Administrative Difficulty Due to Court Congestion

This factor is neutral. Both fora are heavily congested. As of June 30, 2025,

this District had 570 pending cases and 618 weighted filings per judgeship. *See*

Admin. Off. of the U.S. Courts, *U.S. District Courts—Combined Civil and*

*Criminal Federal Court Management Statistics (June 30, 2025)*,

https://www.uscourts.gov/data-news/data-tables/2025/06/30/federal-court-

management-statistics/n-a-1 [https://perma.cc/XSP8-AGTS]. Although the Eastern

District of North Carolina had more pending cases and weighted filings per

judgeship, *id.*, these numbers are skewed significantly by the Camp Lejeune

litigation, for which the Eastern District of North Carolina is the exclusive venue,

*see* Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804(d), 136 Stat.

1759, 1803. Indeed, the number of civil filings per judgeship in the Eastern

District of North Carolina nearly doubled from the twelve-month period preceding

12

June 30, 2022, to that preceding June 30, 2023. *See* Admin. Off. of the U.S. Courts, *supra*. The Camp Lejeune litigation, however, is managed under a single, master docket. *In re: Camp Lejeune Water Litig.*, 7:23-CV-897 (E.D.N.C. Apr. 24, 2023). Accordingly, it is difficult to tell which forum is more congested, and I will thus treat this factor as neutral.

### 10.    Local Interest in Deciding Local Controversaries at Home

This factor is neutral. Both Delaware and North Carolina have an interest in this dispute. Defendants acknowledge that Delaware has some interest because Fund-Defendant is organized in Delaware. D.I. 10 at 17. But North Carolina also has an interest in adjudicating this dispute because Fund-Defendant is headquartered in North Carolina, D.I. 15, and four Director-Defendants are citizens of North Carolina, D.I. 12; D.I. 14; D.I. 15; D.I. 16.

### 11.    Public Policies of the Fora

Delaware's public policy encourages Delaware entities to resolve their disputes in Delaware courts. *Round Rock Rsch., LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012). Defendants have not cited any countervailing North Carolina public policy. Thus, this factor weighs against transfer. *See Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012).

### 12.    Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

This is a diversity case, so *Jumara* factor twelve is relevant. Defendants

13

concede that Delaware law governs Plaintiffs' claim for breach of fiduciary duty. *See* D.I. 10 at 18.  No court has yet to decide whether Delaware or North Carolina law applies to the tortious interference claims.  Defendants argue that this factor is neutral, noting that the elements for tortious interference are similar in Delaware and North Carolina.  D.I. 10 at 18.  Defendants further argue that, to the extent "differences do exist," federal courts in North Carolina regularly apply Delaware law.  D.I. 10 at 19.  Plaintiffs argue that Delaware law applies to their claims, and "insofar as there is a dispute whether Delaware or North Carolina law will apply," Delaware choice-of-law principles apply.  D.I. 17 at 22.

I agree with Defendants.  Article III judges, wherever located, are competent to interpret Delaware law, particularly Delaware corporate law.  Moreover, at this early stage in the controversy, I am unable to determine what law applies to Plaintiffs' tortious interference claims.  Accordingly, I find that this factor is neutral.

\* \* \* \*

In sum, of the twelve *Jumara* factors, seven are neutral, three weigh against transfer, and two weigh in favor of transfer.  Of the three factors that weigh against transfer, one is of paramount importance.

Having considered the factors in their totality and treated Plaintiffs' choice of this forum as a paramount consideration, I find that Defendants have failed to demonstrate that the *Jumara* factors weigh strongly in favor of transfer.

NOW THEREFORE, at Wilmington on this Twenty-third Day of December in 2025, it is HEREBY ORDERED that the Defendants' Motion to Transfer Under 28 U.S.C. § 1404 (D.I. 9) is DENIED.

_____
CHIEF JUDGE